Maytag v. Electrolux Home Products Maytag v. Electrolux Maytag v. Electrolux Home There is a reference to a couple of the objectives of the invention, the objects of the invention. Then there is the state that these and other objects of the present invention are accomplished by providing a molding apparatus comprising a mold core which is fixed at one end and includes tear drop shaped projections. But that is the guts of the statement. It sounds like a pretty conclusive statement that this is the characterization of the invention. And then the knit lines in the two previous paragraphs, which are the objects that are attempted to be achieved, elimination of the knit lines, are both tied to the tear drop shaped groups. Why isn't it fair for the district court to have said, okay, you've defined the scope of your invention in the scope of your disclosure. You can't then come back later and say, well, the disclosure is actually much broader than that. Well, I don't believe they ever came back and said the disclosure was much broader than that. Well, the claims do though, right? Yeah. I mean, the claims are based on the assumption that the disclosure supports a much broader invention. And when the claims were added, the prosecuting attorney said to the examiner that we believe we are entitled to these claims that refer to groups only based upon the prior art. And I think it is worthy of note, Your Honor, that the examiners, and if you look at Professor Keeson's affidavit here, he points out that he researched the history of these examiners. They examined more than 2,000 applications collectively between the two of them. And one examiner, more than 90 in the same art here, they never once raised a written description objection. When the attorney said, we think we are entitled to broader claims based on the art and put the language group in, the issue was not ever raised. Well, the breadth has to be based on the spec, right? In order to get priority. It is true. The breadth has to be based upon the specification. Right. And we submit that a fair reading of this specification is that teardrop-shaped grooves is a groove that works, yes. But nowhere do we say it is the only groove, unlike Gentry. Nowhere do we say, and other shapes won't work, like Toranzo. That's the critical distinction in our minds, Your Honor. And what we do say is, on two separate occasions, that what we are describing here are preferred embodiments. Now, you have one of your claims, I believe it's 25 of the 909, but correct me if I've got the claim number wrong. It has no requirement of any grooves at all. That is true, Your Honor. Okay. So that's just all it has is the plastic with holes in it. Right? Right. Now, here's my problem with your argument, and you can address this if you would. You say in the spec that, and I'm looking again at column one, you say that it has been and then perforate the holes during a subsequent manufacturing step. This method leaves burrs and sharp edges, blah, blah, blah. You solve that problem, as I understand it, with the teardrop-shaped grooves, right? But if that problem does not require the teardrop-shaped grooves to be solved, why haven't you just disclaimed the very thing that you claim in claim 25? Because you've criticized the prior art, which has the holes punctured in the basket. Well, because the teardrop shape is on the inside of the basket. I understand. The beveled groove is on the outside of the basket, and the beveled groove has slanted shoulders like this so that the mold pin can pull out and create draft, not leaving behind any burrs. And so that's another feature of the mold and another feature of the basket. That's different than a straight-through, straight-walled hole where the die, as it would go through, your honor, would in fact pull out and leave burrs behind. So you're saying that the claim distinguishes the prior art that you refer to on column one by the claim I was just referencing. What's the difference between that and the prior art? You've said simultaneously forming the apertures or forming the apertures separately doesn't work. Right. The non-grooved claim shows works, whereas the prior art doesn't work. The non-grooved claim relates to the beveled surface, which is slanted like this, and the pin fits in it and pulls out and away from it, creating draft, instead of straight walls where it pulls out and rubs against them, creating burrs. And where is that revealed in the spec? Is there a discussion of the spec? Well, but of the effect of the beveling to produce the non-burrs? Well, I'll take your word for it if you tell me it's in there. It is in there, your honor. I think it's in column three, looking at my copy of the spec, between lines 10 and line 20. But it is there. Now, if I can summarize our position as to why we believe it's unfair, given the totality of the specification, to limit us to teardrop shape only, it is because, first of all, our spec says that we are disproving preferred embodiments. But doesn't the summary of invention indicate that the elimination of knit lines is really at least a purpose of the invention? The summary of the invention says that elimination of knit lines on the inner surface of the basket is, yes, is one of the objects of the invention. Okay, and doesn't column five, somewhere in 48 to 55, or 48 to 56, indicate, say, that you need the tear-shaped projections in order to avoid the knit line? No, it doesn't. It says it is important to note that the teardrop-shaped projections permit the plastic to flow around the core. Without creating knit lines. Yes. Which would be inherently formed without the presence of the teardrop-shaped projections. Doesn't that, why am I not seeing that this, I'm reading this as saying that the teardrop-shaped projections are necessary to avoid the knit line. It says important. Important doesn't mean necessary. Important does not mean essential or critical. Those are different words. Well, except, yeah, but it goes on to say, which would inherently be formed without the presence of the tear-shaped projections. Which suggests that if you don't have the teardrop-shaped projections, you're going to get the knit lines. No? That is one way of not having them. I submit that an equally fair reading is that if you look at column six, at the end of column six, lines 60 through 65, it talks about the recessed portions. Let me quote from line 64. In addition, since the holes 44 are recessed within the teardrop-shaped groove, any edges on the holes will be prevented from snagging clothes. Well, doesn't that fairly convey to one skilled in the art that it's a recessed portion is the reason why there's no snagging? Snagging, but that doesn't address knit lines. You don't have, is there any place in the specification that you describe how to avoid knit lines other than with the use of the teardrop shape? The only illustration of a shape shown to avoid knit lines is the teardrop shape. So, if the object of the invention is to avoid knit lines, and the way the invention avoids knit lines is teardrop-shaped grooves, how can you come in later and say, well, we claim anything that shows up that doesn't have knit lines, which is effectively what your new claims do. What we are saying, Your Honor, is what Professor Keeson said, and that is that if you show a recessed groove, which is illustrated as a teardrop-shaped groove, and that avoids the knit lines, it's reasonable for one skilled in the art to read this and convey to him that that's a generic description of groove. That's one groove. Teardrop's the adjective. Groove is the vowel. You want to show me the rest of your time? Yes. This Court has said in many cases that you are not necessarily limited to your preferred embodiment as shown. Otherwise, there's no need for 112 paragraph 2, which says the scope of claims. Thank you. Mr. Maxwell. May it please the Court. Good afternoon. My name is Dave Maxwell, representing the Lefkowitz Home Province. The District Court's decision should be affirmed in the simple fact that it is a straightforward application of this Court's jurisprudence under Section 112, as this Court has articulated in Tromso, in Biomed, Gentry Galley, in Berkeley, and indeed in other cases. The District Court, in short, did everything right under some of this Court's directives. Well, written description, it's a fact issue, correct? That's correct. Why isn't there at least enough, in terms of expert opinions, to throw this to avoid summary judgment? It's a difficult issue, I think, a difficult question. As the District Court properly concluded, applying the standards both of the Eighth Circuit, the Regional Circuit, and this Court in Tromso, where there are... First, the only evidence that they point to are the conclusory legal opinions of their own hired experts. They don't point to anyone in the art, no one in the industry. Their litigation experts, a professor of law and a retired professor of aerodynamics, say only, yes, the written description supports the claims. They do not tie that to a fact report. They do not tie it to a part of the specification that says, here's why. They say only, yeah, it supports it, which is the ultimate conclusion. As Judge Bennett properly concluded, in order to defeat a well-founded motion for summary judgment, evidence has to be presented by the non-movement sufficient to enable a reasonable jury to find in the non-movement's favor. And the only evidence here, that's it, are those conclusory statements. One paragraph of Dr. Hall's affidavit, and two or three, depending on the brief, of Professor Keeson's affidavit. And those are purely legally conclusory statements, and as the District Court found under the Assurance Institute case and the Eckelkamp case in the Eighth Circuit, legally conclusive affidavits do not provide a summary judgment motion. And that's all the evidence there is, Judge Croson. So why was the District Court right? What is this case about? It's about the applicants. It's a straightforward principle that an inventor is entitled only to what they disclose as their invention. And here, we have after-added claims, after the accused products were on the market, that are simply not supported by the original description or the original disclosure in the application in Claims S-5. And District Court first properly construed the claims, and as this Court just two months ago, in the Lyman-Flawson case, first construed the claims, then doing validity or validity analysis under 112, and that's exactly what Judge Bennett below did. And the claims here, as you pointed out, are in fact limited to the teardrop-shaped proof. What do the inventors invent? A solution to knitlines. They identify clearly in their objects of the invention. We have found two things in the prior art we think are a problem. You can make a basket and perforate it, or you can solve that by molding a basket, but that results in a knitlines problem. And we've solved the knitlines problem by one and only one method, and that's the teardrop-shaped proofs. Specifically, and I believe it was Judge Brooks who pointed out, that Column 5, Lines 48 to 55, expressly disclosed that only the teardrop-shaped invention will solve that problem. Otherwise, the problems in the prior art are inherent in the resulting molded product. That taught, as this Court has done, found in Tronzo and Gentry Gallery and other lines of cases, that where the patentees clearly articulate why there's a problem in the prior art and a specific area that overcomes it, and why that and only that shape will in fact overcome the problem, then their claims are limited under Section 1. So what's the other side cited kind of in response to that, the bottom of Column 6, I believe, and the other statements with respect to grooves? If you look at the entirety of the section of Column 6 where it starts in line 48 through 65, what they're talking... First of all, it was not directed to the knitlines problem as Judge Bryson pointed out. That's talking about the specific statement to which Mr. Seese pointed at the very last sentence of the paragraph. Since the holes are recessed in the teardrop-shaped grooves, that's talking about the location of the aperture through the teardrop-shaped groove. It couples it to the teardrop, and that prevents the snag, because why? The hole is now away from the clothing to the basket. The clothing can't get on it because it's in that groove, and that has nothing to do with solving the knitline problem. That is an additional benefit of locating the apertures in the particular teardrop-shaped groove, but it is the teardrop-shaped groove, and it's only that that solves the knitline problems. What was the inventor talking about when he testified about not having invented The inventor was talking about, he was shown the accused problems. Did you invent this? I did not. There had been a discussion at the deposition of what did you invent? Tell me when you invented it, the standard inventor's deposition. When presented with the accused problem, after a discussion of the apertures and the grooves and the very structure of the basket, he said, I didn't invent that. That is the totality of Mr. Bryson's testimony. What does that have to do with the teardrop shape? Because what he was looking at were the apertures, which are in the groove, what they accused was the grooves, and he said, I didn't invent that. Now, he was not asked to say, your point, Judge Mayer, did you invent a teardrop-shaped groove? No, I did not. Did you invent a teardrop-shaped groove? Yes, I only invented that. But when presented with the accused device, which is not teardrop-shaped, which is not teardrop-shaped and not even accused to be teardrop-shaped, he said, I didn't invent that. So, this case, in the Appellee's and Electrolux's view, falls squarely within Tronso, where this court in Tronso found where a patentee particularly identified a structural shape and particularly identified why that shape was the only way he could solve the problem at issue, that the claims, after adding in Tronso also, that were broader than claims with that limitation, simply were not supported by the original description. And we would submit that the facts of Tronso and the law as applied by both the district court and this court in Tronso could not be more on point with exactly what we have here. We have original claims filed and disclosed to the patent office, all of which have the teardrop-shaped limitation. You have the specification before you, which talks about grooves and does so only in the context of the modified teardrop-shaped grooves. After adding claims, first 18 months later after the accused products were on the market, the claims suddenly don't have the teardrop limitation, but they do have grooves. That's claim 24. Five years later, all the other claims at issue have no grooves at all, and those claims are submitted to the patent office. And we would submit that under the Tronso and Gentry Galley analysis, where that kind of claims that are that broad and clearly go beyond the description that the patentees told the world they invented, they are invalid under Section 112, Paragraph 1. Maytag's principal argument in opposition to that is that this is just a preferred embodiment. And they point the court to three and only three parts of their patent that they say supports that argument. The first two we have characterized with boilplate. Why? Because they precede the detailed written description and they are followed at the end of it. That exact language, this is just a preferred embodiment, we are only intended to be limited by our claims, is in fact in the very patents that this court found invalid under 112 in Tronso, it's in the very patents that this court found invalid under 112 in Gentry Galley, and even in the Lizard Tech case. That kind of language is either before or after or above in all of those patents. That cannot be a basis for not applying 112 to the written description. The only substantive portion of the disclosure that the patent points to is found in paragraph 3, I'm sorry, column 3, beginning at approximately line 8 through line 20. It's worth noting that in neither their opening or their reply brief do they cite the entirety of this paragraph, but they want to ask the court to read the paragraph to apply a preferred embodiment analysis to every element that is listed in this paragraph, when what it really does is only say, when referring to a figure and the apertures that are disclosed in that figure, but in a preferred embodiment. However, in a preferred embodiment, these apertures go all the way around the tub. It then goes on to describe other aspects of the structure of the tub that they're claiming, the spin basket. So the structure of that paragraph doesn't support their reading, but the structure of the patents doesn't either, because two paragraphs later in the patent, and I'm looking at the 999 patent, the disclosures are the same, the numbers are slightly different, where the patentee begins to talk about the apparatus that forms these teardrop-shaped grooves and makes the tub, he again talks about, or they again, their talk about projections now that are teardrop-shaped, specifically reference that those projections form the grooves he was just talking about, and there's no mention of preferred embodiment whatsoever in that paragraph. Moreover, when the patentee wanted to talk about preferred embodiments, he knew exactly how to do so, and in fact did so. And I would, just by way of example, point the court to column 4, lines 6 through 17, where the patentee now talks about a preferred embodiment on a particular apparatus, where it's the number of cavity sidewall members in the cavity, whether it's 4 or 6, a preferred embodiment is 4. There is no question that this is not merely a preferred embodiment that the inventor is talking about, but as Jeff Prost pointed out, the invention is the structure of the teardrop-shaped groove, and only that structure solves the knitline problems. The patentee says himself that absent that, it's inherent. Finally, they argue... Well, but why is it not the case that setting aside knitline, the knitline problem altogether, that... Why don't they have at least some minimal disclosure, let's say, of just holes in grooves to avoid snagging? So that set aside teardrop-shaped grooves, you don't need to... A groove doesn't need to be teardrop-shaped just to have a hole at the bottom of it, presumably. Why can't they point to that language, such as at the bottom of column 6, and say, there you go, even though we refer to it as teardrop. Teardrop there is not essential to the location of the holes, which avoids snagging, and therefore we get any kind of groove, and by extension, I guess, even non-groove. Well, with respect to Judge Bison, that's not at all what this patent discloses. At no point does the patent disclose that the invention, Section 112 requires an inventor to disclose his or her invention to the public. Describe it in particular detail, enable it so that one can do it without undue experimentation. In this case, Section 112, paragraph 1, the written script requires the invention to disclose as his or her invention what it is they're talking about. Not, for example, to talk merely about, well, you can also put holes in a groove, and that might avoid burrs, because what they talk about avoiding burrs is the molding process will avoid burrs. That's a problem in the past. Mold solves the perforation issue. Now with perforation, we have knit lines. The only way to solve knit lines is to have the teardrop shape. Moreover, prior to our record, where it was the 413 Japanese patent application discloses molding a plastic washing machine basket with an automatic mold where the holes are molded in the sidewall, and they're in a groove. This seems... I was going to ask you that. If there is prior art, this seems to be a very elaborate way to get at a problem which seemed like it was probably more directly addressed by the question of whether the broader claims read on pre-existing  Why are we presented with this rather... These written description cases are always tricky, and if there is governing prior art, as you say, why isn't that the issue that was presented to us? There must be some kind of problem with the prior art. I would submit to the court that that was reduced, the district was. And the district court ruled on this issue and only this issue, and moved to all the other bases of what we believe was a well-found question for some of the judgments. With respect, it is the case. I would also like to point out that the inventor himself noted that the non-teardrop shaped grooves could not be molded which is a... To respond to your question, why can't you just put in any shaped groove? For example, what the inventors really want to do, and this is in our brief, is mold a circle. But you can't mold a circle and get it over the bumps that actually cause that. It sticks and can't come off. How did they solve that? They made the groove elongated and teardrop so that it would in fact come off the mold core. The inventors themselves acknowledged that the groove had a teardrop shape in order to actually be usable. Now, I recognize my opponent did not argue the enablement issues, so I will not argue that point unless the court has questions about it. So in sum, what we have is a very straightforward application of this court's jurisprudence under Section 112. The Toronto case tells us what 112 means and what these after added claims Gentry Gallery does too. Where the patentees disclose their invention as a particular aspect directed to a particular problem, as they did here, then after added claims that go beyond the breadth of those claims are invalid under 112. Thank you. Questions? Your Honor, let me go back to the lawyer to say that should be ignored because it is legally conclusive. Professor Keeson's affidavit, and by the way, yes he's a lawyer, but don't penalize him for being a lawyer. He also has a Ph.D. in engineering. And he has a joint appointment at the University of Illinois from the law school and engineering school. He says in his affidavit there are four reasons why he believes that a fair reading of this context is that teardrop shaped groove is just illustrative of the generic term groove. First, he says there is specific reference, there is no specific reference that denigrates other shapes. Secondly, he says there is no requirement in patent law that every shape of groove be disclosed in order to claim grooves in general. And third, he says these examiners were very distinguished backgrounds, 1,900 applications examined by one, 900 by another, and they never made a written description requirement. And finally, these are mechanical inventions. This court has consistently said there is no bright line test here on written description, and I think rightly so. And not to be lost sight of the fact is that this is a mechanical invention, and in mechanical inventions it is very common that one embodiment supports claims that are broader than the specifics of the embodiment shown. All right. Thank you very much. The case is submitted. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.